[Crim. No. 348.    Fifth Dist.    Jan. 31, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LEWIS FLOYD HAMILTON, Defendant and Appellant.

Donald B. Cantwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Edsel W. Haws and John Fourt, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—This court heretofore filed an opinion affirming the judgment as to the third count (statutory rape) and reversing it as to the first and second counts charging felonious assault; the reversal was due to the fact that on the basis of the record and the briefs as they were originally presented it appeared to us that the trial judge had committed incurable error by gratuitously stating in the presence of the jury that the defendant had pleaded guilty to statutory rape. As the record then purportedly showed, no previous reference had been made in the presence of the jury to the admission by the defendant that he was guilty of statutory rape. However, a completed transcript, including those portions which had been previously omitted when approved by the trial court and the reporter, was brought to our attention before the judgment became final in this court, and the Attorney General, who had formerly been silent on the point, urged that there had been a cure of the trial court's apparent error, with the result that we granted respondent's petition for a rehearing and ordered an immediate resubmission of the case.

The reporter's transcript was originally silent with respect to defendant's admission before the jury that he was guilty of statutory rape; it showed that after the jury was selected the People waived an opening statement, the defendant reserved the right to make one, and the court recessed for 10 minutes. The transcript then stated:

"THE COURT: All right, gentlemen, are you ready to proceed?

"MR. FULFER: [defense counsel] Ready, your Honor.

"MR. IORILLO: [deputy district attorney] Yes, your Honor."

The official reporter certified that pages numbered 1 to 306 of the reporter's transcript as filed ". . . contain a full, true and correct transcript of my said shorthand notes, and a full, true and correct statement of all of said testimony and proceedings." And the trial judge certified that the transcript ". . . is a full, true, correct and fair transcript of the proceedings had at the trial, and testimony offered or taken, evidence offered or received, acts or statements of the court, also all objections and exceptions of counsel and matters to which the same relate. . . .

"I further certify that none of the parties to the action or

anyone else has in any manner made objection or taken exception to the correctness of said transcript.'' On the contrary, the augmented record shows that, during the period between the selection of the jury and the start of testimony, the clerk, at the direction of the court, read to the jury the full charge as it appeared in the information including the following: ''Count III: The said Lewis Floyd Hamilton, on or about and between the first day of April, 1966, and the first day of August, 1966, at and in said County of Stanislaus, State of California, and prior to the filing of this Information, did wilfully, unlawfully and feloniously have and accomplish an act of sexual intercourse with and upon Glynis Lavonne Ihrig, who was then and there a female person under the age of eighteen years, to wit, of the age of seventeen years, and not then and there the wife of the said Lewis Floyd Hamilton.'' The clerk then stated that the defendant had entered a plea of not guilty to each of the five counts. Immediately afterwards, the following occurred in the presence of the jury (Reporter's Transcript on Appeal—Augmentation of the Record) :

''MR. FULFER: If Your Honor please, at this time on behalf of the Defendant Lewis Floyd Hamilton I would like to make a motion that he be allowed to withdraw his plea of not guilty as to Count III of the Information, the statutory rape charge, and enter a plea of guilty.

THE COURT: Stand up. You heard the statement made by your counsel, here, Mr. Hamilton, to the effect you wish to withdraw your plea as to Count III of the Information.

THE DEFENDANT: Yes.

THE COURT: That count charges you with statutory rape, a Violation of Section 261.1 of the California Penal Code. Do you understand the nature of that charge?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand it charges you with an act of sexual intercourse with a girl under the age of eighteen, not your wife? Is that right?

THE DEFENDANT: Yes.

THE COURT: Has there been any promise of immunity granted for the purpose of getting you to change your plea?

THE DEFENDANT: Well, no.

THE COURT: I want to know, now, because I want you to understand this before you change your plea, that the Court

would not be bound by any representation made to you by anybody.

THE DEFENDANT: Yes, I understand.

THE COURT: That means the police officers, District Attorney's Office, your own counsel or anyone else. I don't want you to change this plea unless it is a free and voluntary act on your part. Is it a free and voluntary act upon your part?

THE DEFENDANT: Yes.

THE COURT: You are acting under the advice of Counsel who is with you here today. Is that correct?

THE DEFENDANT: Yes..

THE COURT: Is there any objection to the withdrawal of the plea?

MR. IORILLO: May the record show that it is because he is, in fact, guilty?

THE COURT: All right. What plea are you going to enter?

MR. FULFER: We will enter a plea of guilty.

THE COURT: In other words, Mr. Hamilton, you are entering a plea of guilty to the third count of the Information, statutory rape, because you are, in fact, guilty of that offense. Is that right, sir?

THE DEFENDANT: Yes, sir.

THE COURT: No question in your mind about it?

THE DEFENDANT: No, sir.

THE COURT: The motion will be granted as to Count III. The Clerk will take a new and different plea.

THE CLERK: Lewis Floyd Hamilton, what is your plea to Count III, Violation of Section 261.1, California Penal Code, a felony, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Let the record reflect the Defendant, represented by counsel has entered a plea of guilty to Count III of the Information, to wit, Violation of Section 261.1 of the California Penal Code, a felony, statutory rape.

This removes from your consideration one portion of this case and leaves to be tried Count I, to remind you again, a charge of assault by means of force likely to produce great bodily harm on Glynnis Lavonne Ihrig; Count II, which likewise is an allegation of assault by means of force by the Defendant on Glynnis Lavonne Ihrig and Count IV, the allegation of assault by means of force on Johnnie Hershell Winkle. Those are the only three matters in the Information that will be left for your consideration. All right, sir.

Do you wish to make an opening statement?

MR. IORILLO: No, Your Honor.

THE COURT: Do you wish to make an opening statement?

MR. FULFER: I would like to reserve mine.

THE COURT: All right. Will you call your first witness?''

Inasmuch as the defendant himself, in cooperation with his counsel and in the presence of the jury, changed his plea from not guilty to guilty on the statutory rape charge, it is obvious that the defendant could not possibly have been hurt later by the court's mere statement in response to an objection of the deputy district attorney as follows:

''MR. IORILLO: I want to interpose an objection. The counts of statutory rape are no longer in evidence. The only counts remaining are the felonious assault counts, and I don't know where this is going. I still don't know whether it can be tied in.

''THE COURT: I can't see the relevancy. *As Mr. Iorillo says, the defendant entered a plea of guilty to statutory rape in this matter.* The consent or lack of consent of the parents to any illicit relationship between these two children is immaterial, so I will sustain the objection.'' (Italics added.)

The attorney appointed on appeal by this court was also innocently misled by the original partial nature of the reporter's transcript into saying on page 9 of his brief: ''Appellant's plea of guilty to Count 3 of the information was received out of the presence of the jury. (RT p. 2, Court Reporter's Certificate 2, Reporter's Transcript, CT p. 7.) At the time the plea was received neither party had made an opening statement concerning the facts of the case. (CT. p. 7.)'' And the Attorney General, who, like appellant's counsel, was not himself or by any deputy present at the trial, did not question the foregoing statement in appellant's brief.

■ The completed record as it now exists made the later reference by the trial court to the rape charge against the defendant and his concession that he was guilty unacceptable as a ground for reversal; the record now shows that the defendant, by his own motion, brought his change of plea and his admission that he was guilty of statutory rape to the attention of the jury.

Apart from the foregoing point, the court is of the opinion that the conviction of the defendant on counts I, II and III should be affirmed but that with respect to count IV, as the defendant has already been credited with time actually served in the county jail equal to the penalty imposed as a result of such conviction, it cannot be considered on appeal as it is moot. We readopt those portions of the opinion heretofore filed

which are not changed by the foregoing consideration of the reference to the rape charge:

"The defendant, Lewis Floyd Hamilton, was charged in the information with four felonies. Count I alleged that on or about the 16th day of August 1966, he '. . . did wilfully, unlawfully and feloniously assault Glynis Lavonne Ihrig . . . by means of force likely to produce great bodily injury.' Count II charged the defendant with another assault on Miss Ihrig '. . . by means of force likely to produce great bodily injury,' which was said to have occurred on the 17th day of August 1966. Count III charged Hamilton with statutory rape of Glynis Lavonne Ihrig, and count IV alleged that the defendant was guilty of felonious assault on Johnny Hershell Winkle '. . . by means of force likely to produce great bodily injury.'

"While the appeal from the judgments of conviction was not limited in form to specific counts, the effect of the appeal is in fact restricted to the convictions on counts I and II for the reason that on the eve of the trial the defendant changed his plea to guilty as to the statutory rape charge (count III), and that the conviction of simple assault, an included offense within that which was charged in count four, resulted in a county jail sentence with credit for the time already served in the exact amount of the 20-day sentence.

"It is conceded in the appellant's opening brief that his '. . . claim of error is limited to Counts 1 and 2 of the information.' ▇▇▇ The plea of guilty to the rape charge is not questioned in. appellant's brief; 'the defendant has already been sentenced to a term of 20 days in the county jail'; as the appellant has served the whole of his sentence on count IV, that portion of the judgment is now moot and an appellate court will not review questions which are only of academic interest. (*Keefer* v. *Keefer*, 31 Cal.App.2d 335, 337 [87 P.2d 856].)

"The points made by the appellant for a reversal of the judgment as to the first and second counts are:

"1) That in the circumstances the trial court committed incurable error by stating in the presence of the jury that the defendant had pleaded guilty to the statutory rape;

"2) That, while the evidence on the first two counts was technically sufficient to warrant convictions of simple assault, such evidence was not ample to justify the felonious conviction on either of those two charges; and

"3) That the young woman who was alleged to have suffered felonious assault in two instances was improperly coerced into testifying against the defendant.

"We shall consider these claims in inverse order. When the . . . Ihrig girl was first called to the witness stand, she refused to testify other than to give her name, address and the date of her birth. The trial court after directing her to answer other proper questions met her continued refusal by ordering her confined in the county jail for contempt of court. She had an overnight change of mind and testified the next day, but she. said that she only did it because the probation officer and the jail matron had told her the court could keep her in jail until she did testify and might even send her to the California Youth Authority. She assured the court that she would tell the truth and the evidence was admitted.

"It savors of the ridiculous to contend that a witness may decide for herself whether or not she will testify in court. Criminal law and procedure were not enacted for control by individuals, and a criminal case is not the personal property of a complaining witness or others. It was the state which enacted our criminal laws and it is the right of the state to avail itself of a relation of facts by all witnesses unless there exists and is claimed in a very small area a right of the witness to refuse to testify on the ground that it involves a privileged communication or that it might tend to incriminate or degrade him. No such situation existed here, and it was the right of the state to demand and compel the giving of testimony. The elements that might show the existence of pressure on Miss Ihrig to induce her to testify could, of course, be shown by the defense as bearing on her credibility as a witness.

"The appellant contends that the evidence was not sufficient to sustain the felony assault convictions on counts I and II. The first assault (count I) consisted of about ten blows from Hamilton's closed fists, the second blow knocked the girl down, and the total made her nose and mouth bleed. The second assault included several blows from the defendant's fist, and the girl was pushed to the floor; her nose, lip and ear were caused to bleed, and her eyes to become discolored. The record shows that she was able to continue with her normal life on each of the two days involved; on the first day, she painted cabinets in her home; on the second day she went to a park with the defendant. Appellant contends that the verdict was wrong in that the victim in this case did not receive great bodily injury, but the question remains whether the evidence was such that the jury could have decided reasonably that the assaults, as they occurred, were likely to produce great bodily injury and we cannot say the evidence might not lead to this

legitimate conclusion. Great bodily injury need not be the actual result of such attacks as were charged. (*People* v. *McCaffrey*, 118 Cal.App.2d 611, 616-617 [258 P.2d 557].)

"The assaults in question were effected by repeated blows from appellant's fists, and the jury, it seems to us, was justified under these facts in finding that the appellant committed the assaults by means of force likely to produce great bodily injury. (*People* v. *Score*, 48 Cal.App.2d 495, 498 [120 P.2d 62].)"

We find it improper to pass on the propriety of the conviction on the fourth count as it was moot at the time of the appeal.

The judgment is affirmed as to counts I, II and III.

Stone, J., and Gargano, J., concurred.